this case which is Kim v. State Farm. Good morning, your honors. May it please the court, my name is Jeffrey Lindquist. I represent the plaintiff's appellants, Jang Ho Kim and Jay Oak Kim. Mr. and Mrs. Kim are homeowners in South Windsor, Connecticut, and they are among an ever-growing number of Connecticut residents in the northeast part of the state that have fallen victim to a crumbling concrete phenomenon that has resulted in nearly all of their homes being numerous homes breaking apart and fracturing in a manner that we don't expect of normal concrete. The concrete at issue was poured over several, over a couple of decades by one supplier and thousands of homes may be affected. The Kims, like many who have found themselves in this unfortunate situation, have looked to their homeowner's insurance carrier for coverage of the damage and for assistance in remediating the condition, which entails the complete removal and replacement of all of the concrete basement walls. Does the insurance policy guarantee somehow that the house was soundly constructed? No, your honor, it doesn't guarantee that. Should it, in fact, have exclusions for, among other things, settling, cracking, bulging, expansion of walls and floors, and another exclusion for defect, weakness, inadequacy, fault, or unsoundness in workmanship and construction and materials used in construction? Yes, your honor. Why don't those apply? I don't understand. Your honor, many of the policies of insurance that are issued in the state of Connecticut contain an additional coverage for collapse. This very policy did, in the first instance, contain such an additional policy. That puzzles me, too. I mean, collapse can come from many sources, and there are whole issues in Connecticut law, and I thought quite sensibly resolved, as to what collapse means and quite sensibly says you don't have to actually wait until the house really does collapse, if it's imminent or if it's inevitable that it will collapse under the circumstances. That all seems to have to do with the extent of damage. It doesn't seem to me to have much to do with the causes when it's quite clear that the policy intends to cover unforeseen events. If a lightning strike happens and then the building is in danger of collapse, the collapse coverage clicks in, but if there's an inherent defect in the construction materials, why does the fact that it covers collapse trump those exclusions? Well, your honor, two points. Under the additional coverage for collapse, which of course has been deleted, defective materials is one of the named perils for the collapse. My suggestion is that's the additional coverage that is excluded. It doesn't happen here in this case, right? Well, yes. The additional coverage was deleted, but along with the exclusion for collapse. I'm sorry. I understand that. It seems to me you have a much better answer to Judge Lynch's question, unless I misread this policy, than the answer that you gave, because Judge Lynch was talking about the inherent defect in materials used in construction. But immediately under that, it says, however, we do insure for any resulting loss from those. And so it seems to me that the clear meaning of the policy, at least as I read it, is that you don't get, you're not insured for a defect in the materials. If you come and say, hey, there's a defect in the materials, I want coverage, you do get, you do have coverage from resulting loss from defect in the materials used in construction. Yes, Your Honor. And that's, I hope, where I was going. Well, I would urge you to get there pretty quick, because I think your success in the case, if you have any likelihood of success, depends on that. Right. And that's why I was speaking to the It says it both under Item 1 and under Item 3. Under Item 1, Section 1, loss is not insured. There are two different parts. Item 3 clearly says we do insure from any resulting loss from A, B, or C. And B is defect in the construction materials. In fact, unless it goes on to say, unless the resulting loss is itself a loss not insured by this section. Unless the resulting loss is not insured. Right. And so that's why it becomes critical that the collapse exclusion was deleted along with the collapse additional coverage. Because now a loss by collapse is not excluded in the first instance under the policy. And as Your Honor noted, the Connecticut law is clear that a house need not, unless explicitly stated in the policy, tumble to the ground. The resulting loss is the collapse. I believe so, Your Honor, now that that collapse is no longer an excluded loss under the policy. Collapse has simply been taken out of the previous, the printed matter that excluded collapse from coverage was deleted so that the exclusion of collapse is not a part of the policy. Exactly, Your Honor. And that's why I believe that the district court erred in failing to protect the reasonable expectations of a homeowner. It's an all-risk insurance policy. All risks are covered unless they're excluded. If an exclusion is deleted, it only makes sense that that peril is now covered under the policy, either in the first instance or if it's the result of faulty, inadequate, or defective materials. What's the effect of the endorsement, though? It says that Section 1 additional coverages, which I read, gives limited collapse coverage. I mean, there's some limitations on it. But then it says, Section 1 additional coverages, collapse is deleted. Right. What's the effect of that in your view? In my view, what happens is the policy says, we do not cover collapse under any circumstances. Wait, we do cover some collapses, and we're going to give you an additional coverage for that. In the endorsement, they take away the additional coverage, the limited giveback of coverage, but they also take away the exclusion with it. So now collapse is not excluded at all. It's part of the all-risk coverage grant. They took it all away, gave a little back, then they gave it all back by deleting the whole kit and caboodle. I understand the district judge, instead of reading the language, literally said something along the lines of that it wouldn't make sense for the insurer to have done that. And so she interpreted the policy as essentially protecting the insurer from the words that the insurer put into the policy. She didn't think it made sense for the insurer to delete the exclusion of collapse. Right. The way I read the district court's opinion was that she said they intended to delete, they intended to exclude collapse coverage, so of course they deleted it all. But that doesn't really follow. If they intended to exclude collapse coverage, they would have kept the collapse exclusion and excluded it all. And not only did they, did the endorsement not maintain consistency through the policy, it introduced another inconsistency by adding in another collapse reference and a different part of the policy. Thank you, Mr. Lindquist. You've got a couple of minutes for rebuttal. Thank you, Your Honor. And Mr. Dunham, you're next. Your Honor, Douglas Dunham for State Farm. I'd like to pick up on a question that was asked previously, and that is that the, about the ensuing loss issue. If you look on page six of the plaintiff's reply brief, they've actually abandoned their ensuing loss argument. They state there, among other things, that State Farm misconstrues the Kim's argument as advocating a warped theory of loss of coverage, and this is not the case. And then they go on to talk about, essentially, how they're really relying on the argument as a direct accidental fiscal loss, and none of the exclusions should apply. Are you talking about the question that Judge LaValle asked earlier? Yes, I am. Yes. They, they abandoned The question, okay. Yes, that's right. Whether there wasn't Can I ask a question? Sure. Okay. And that's the section on 829, which talks about resulting loss. You said ensuing loss, but I just want to make sure that you're talking about the area, the part of the policy that Judge LaValle was asking about. Yes, I am. Is that what you're talking about? And ensuing and resulting loss are used pretty much interchangeably in Connecticut. And so the plaintiffs have abandoned that. The policy doesn't use ensuing loss. The policy uses resulting loss. Yes. And it says we do ensure for resulting loss. Right. Right. But you have to have, first, if you, I think if you look at page six of the reply, they've abandoned that argument. Secondly, in order to have a resulting loss, you can have, that be covered only if they are distinct and separable from the original excluded loss. And here the plaintiffs do not allege any resulting or ensuing losses that are distinct or separable from the original excluded loss consisting of and caused by the deterioration, cracking of the foundation. They also haven't alleged any independent incident that is caused by any ensuing loss. Could you clarify that argument by giving an example of what would be covered as a resulting loss resulting from this particular concrete defect? What would be an independent resulting loss caused by the defect in concrete that is independent and distinct from the defect in the concrete? It could be, I don't know, give me a chance to come back to that, Your Honor. What about if the house collapses? If the house collapses. You have a defect in the concrete. That's something that you could claim about, except the policy says it's excluded. That would still be excluded because. Excluded. It would still be excluded. The defect in the concrete is excluded because the policy says we do not insure for defect in the materials used. But then it says we do insure for resulting losses. So Judge Lynch is asking what would be a resulting loss, and I'm adding to that question, if as a result of the defect in the concrete, the house collapses. Is that a resulting loss from a defect in the concrete? That is not a resulting loss because it would still be covered. Why not? It would be still, it would not be separate and distinct from the original issue, which is the cracking and the defect in concrete. The cracking, Your Honor, the cracking exclusion and the policy specifically talks about whether the loss occurs suddenly or gradually, involves isolated or widespread damage. I'm not talking about the cracking exclusion. I'm talking about the defect in the construction materials. Yes. And it goes on to say we do insure for resulting loss from defect in the concrete. And why isn't, if the defect in the concrete causes a wall to collapse and fall down, who in the English language wouldn't think that was a loss that resulted from the defect in the concrete? But it has to be a, the original loss, excluded loss in this case, is caused by the defect in the concrete. Under Connecticut law, the resulting loss has to be distinct and separable from that. You don't think that collapse of the house is something distinct and separate from defective concrete? That that's not an additional separate thing? Not only did I have problematic concrete, but the whole house fell down. That's not a different thing? Well, there also has to be a no non-excluded loss that is the proximate cause of the loss. Well, wait, before we get away from this, Mr. Dunham, there, I think I see what you're getting at in that I believe I have encountered in other situations the kind of distinction that you're making about resulting losses being independent. Right. And let me suggest a possible situation. Suppose the defective workmanship was in the roof and there was a problem with the roof that led to leaks from a rainstorm. And then the leaks damage the homeowner's property in the upstairs bedroom or something like that. Right. So my question to you, if you know the answer, is would the homeowner be able to claim for the damage to property caused by the leak? Would either of those be a resulting loss in the sense that you're using the term? It might be, Your Honor. But I would say again, in this case, there is absolutely no allegation by the plaintiffs of any distinct or separable loss. I'm going to ask Mr. Lindquist, I guess when he gets back up, about whether this issue of resulting loss, apart from your argument that is waived in the reply brief, was actually made. Because I have this belief, I guess we may have to do some independent research of our own, that there's something to your argument about what resulting loss means in either side. And I would also, sir. And I could have just missed it, because there's a lot of cases. And Connecticut courts, such as Judge Underhill in the Mazzarella case, which we submitted with our 28J letter two weeks ago, have expressly rejected the application of the ensuing loss doctrine in the context of cracking cement in basements. So we might look at that opinion. Yes, that would be a case to look at. That might illuminate for us the question of resulting loss. Right. That did not answer my question, which is, did either party brief the applicability of the resulting loss clause to salvage this claim and give us the various kinds of case law that you are now alluding to as establishing a somewhat technical meaning for resulting loss that we could look to, to evaluate the question that Judge LaValle is asking. We have briefed that in our appeal brief, Your Honor. Okay. And where would we find those cases? Those cases are all discussed on page 24, beginning on page 24 of our appeal brief. And we've supplemented that with the Mazzarella case being cited. And I'd like to direct the court to the Sansone case, which we think is squarely on point here. The plaintiffs rely extensively on the Beach decision from the Connecticut Supreme Court. And the Sansone case says squarely that Beach does not apply to a policy like State Farms that does not use the word collapse in a coverage provision. The Beach decision was written by the Superior Court of Connecticut that was adopted in full by the Appellate Court of Connecticut as being the Appellate Court's decision in that case. The Appellate Court said that it was a correct application of Connecticut law and adopted it in full. And under this court's precedent, we've cited one case, Villas v. Mahamot, on page 25, note 6 of our brief, decisions of State Intermediate Appellate Courts are binding on the court unless there is persuasive evidence that the High Court and State, in this case the Connecticut Supreme Court, would reach a different conclusion. And there's no evidence of that here. The Beach case, that is the Supreme Court case that is relied on by the plaintiffs, is simply not applicable here. That case, unlike State Farms policy, did provide special coverage for collapse in the policy at issue. The policy excluded cracking, settling, and other items unless there was a collapse of the building. The case did not define what collapse was. So the Connecticut Supreme Court said it was ambiguous, construed it in favor of the insured, and said there could be a substantial structural impairment was sufficient in that case to be able to constitute a collapse. But your point about that is that Sansone says that that's not relevant. Right. Yeah, Sansone squarely says that the Beach case, which is the primary case that they rely on, is not relevant. Now they try to make the argument- And that's because there's no collapse coverage. Because there is no collapse coverage. Collapse is not used in any relevant term in the State Farm policy. It is used in two places. It is used to say that it is a rather complicated thing, saying apart from the things where it was excluded, where the provision was taken, deleted from the policy, there's another one which says something to the effect that we don't cover for collapse when it would be caused by earthquakes. Right, and those exclusions are not applicable here. None of those exclusions. There's an earthquake. Well, if they have anything to do with this case, there's kind of an implication that it's not excluded across the board. Right. If the policy goes to the trouble of saying it's not excluded when it results from an earthquake. That's right. And it is our position, as the district court properly concluded, that there could be some collapse coverage under the policy, but it cannot be excluded by any of the remaining exclusions in the policy. And here the district court properly concluded, as did the court in Sansone- Where is anything in the policy, then, that says that a collapse, which you acknowledge, could be covered by the policy? Right. Why isn't it covered when the collapse results from something where we do ensure for any resulting loss from defect in the construction materials? Isn't that at least ambiguous as to whether it gives coverage? I don't know. I think the exclusions for cracking and for defective materials have been held by numerous courts to be clear and unambiguous. For the reasons that we have talked about and are explained more fully in our brief, the resulting- That is clear and unambiguous. It may be, but I'm talking about the part that comes immediately after it saying, however, we do ensure for resulting losses from the ones, ones that result from the ones that are unambiguously not ensured. Right. But those losses, again, to be qualified as resulting losses, they have to be distinct and separable from the original excluded loss, which is not the case here. There also has to be- What do you rely on for that? That's not something in the policy, is it? That would be the Sansone case, the Mazzarella case- The lower court case. And those cite other cases. We've cited additional cases beginning, I believe it's page 24 of our appeal brief here, on an issue, too, that discuss why the resulting loss doctrine is not applicable in this context. And is that based on the proposition that when there's something unclear in a policy that the insurance company has drafted, the rule should be that you read it in favor of the insurance company that drafted the policy? No, Your Honor. That's based on the requirement of Connecticut law that there has to be a distinct and separable loss resulting loss from the excluding loss, which there is not here. That's a well-settled principle from the Connecticut Supreme Court and all the other courts in the State. In addition, there has- What's the Connecticut Supreme Court case? The Sansone is not a Supreme Court case. No, but we have cited a number of cases in our brief, Your Honor. You've cited a decision from the District of Connecticut. Right. You've cited Oestreger and Newman on coverage disputes. You've cited Sansone, which is a Superior Court decision affirmed by the Connecticut Court of Appeals, and another Court of Appeals case, New London County Mutual Insurance v. Zakem. But there's not a Supreme Court case. Right. Well, we do have, though, the Yale University case cites other cases, and I may have been mistaken on the Supreme Court. And again, I'm going to ask Mr. Lindquist what he's got on the other side, if anything, of this issue and whether he even raised this question of resulting loss. But we'll hear from him, I guess, in due course. Right. Thank you, Mr. Dunn. Thank you. Mr. Lindquist, you've got a couple of minutes. You want to address Judge Lynch's question first about have you ‑‑ I guess the first question is have you conceded resulting loss doesn't help you here? I don't know that I've conceded it, Your Honor. I just think that the stronger proposition is that to a layman, if you have excluded an item, apparel, under an all‑risk policy, and you delete that exclusion, that is now a risk that is covered, being collapsed. And I don't believe that the Sansone case bars that proposition. Sansone found that Beach was inapplicable because the policy there did not ‑‑ Let me try to articulate where I think the panel has been going in its questions to both sides. I asked you at the beginning whether the entire list of exclusions, which go to construction defects, materials, inherent vice, they express it about a dozen different ways, that they're excluding risks that come from the basic problems that preexisted the ownership of the house and the policy and anything else. And I asked you about that. And your answer to me did not start with, oh, but that same paragraph says, but losses resulting from those apparels are not excluded. And you didn't raise that, but Judge LaValle did. So I think what we're focused on at this moment is, was there ever any argument in your brief that the inherent defects, construction material defects, exclusions, do not apply here because of the resulting loss issue? And then a subsidiary question would be, if there was, your adversary has suggested that it was abandoned in the reply brief. I don't believe I ever briefed the resulting loss in any meaningful way. So we will not find in your brief, apart from putting aside any questions of waiver or anything like that, I will not be helped by your brief in finding responsive cases to the ones that are cited on pages 24 and 25 of the FOE's brief. You will not. Did you want to say anything else? No, Your Honor. I believe my briefs address the rest of the issues. I thank you very much for your consideration. Thank you.